IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JUSTIN ALAN QUINLAN,<br><br>Petitioner,<br><br>vs.<br><br>PETER BLUDWORTH, WARDEN CROSSROADS CORRECTIONAL CENTER; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 21-108-BLG-SPW-TJC<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Pending before the Court is state pro se petitioner Justin Alan Quinlan's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (Doc. 1.)

As previously explained to Mr. Quinlan, this Court is required to screen all actions brought by prisoners who seek relief. 28 U.S.C. § 1915(a). The Court must dismiss a habeas petition or portion thereof if the prisoner raises claims that are legally frivolous or fails to state a basis upon which relief may be granted. 28 U.S.C. § 1915A(b)(1), (2).

Because it appeared all but two claims[1] contained in Mr. Quinlan's petition

---

[1] These claims are Claim 1 and 2. Claim 1 alleges the state court erred in the interpretation and application of the Rules of Evidence in Mr. Quinlan's trail. Claim 2 alleges that the trial court violated Mr. Quinlan's right to confrontation and ability to present a complete defense. See, (Doc. 1 at 4-5). These claims will

1

were procedurally defaulted, he was advised that unless he could demonstrate a basis to excuse the default, the defaulted claims would be recommended for dismissal.  See, (Doc. 3.)  Mr. Quinlan timely responded.  (Doc. 7.)

## I. Background

The procedural history of Mr. Quinlan's state proceedings has been set forth at length in prior orders of the Court.  It is briefly summarized below.

In August of 2018, a jury in Montana's Sixteenth Judicial District, Rosebud County, found Mr. Quinlan guilty of Incest of S.Q., his daughter.  Mr. Quinlan was sentenced to Montana State Prison for 100 years, with 75 of the years suspended.

Mr. Quinlan filed a direct appeal challenging the district court's evidentiary ruling precluding the presentation of extrinsic evidence to undermine the victim's credibility.  The Montana Supreme Court determined the district court did not misapply the rules of evidence or abuse its discretion in making its evidentiary ruling.  Similarly, the Court determined Mr. Quinlan's right to confrontation, under both the federal and state constitutions, was not violated.  See, *State v. Quinlan*, 2021 MT 15, 403 Mont. 91, 479 P. 3d 982.

Quinlan then filed a state habeas petition with the Montana Supreme Court in which he raised 19 claims and requested dismissal of his criminal case.  The Court determined that Quinlan failed to establish that his incarceration was illegal

---

be addressed in a separate order.

or his sentence was invalid. Further, the Court noted that the majority of the claims were beyond the scope of a petition for habeas relief and, instead, should have been raised in an appeal. The claims were, therefore, precluded by application of Mont. Code Ann. § 46-22-101(2). The petition was denied and dismissed. *Quinlan v. Bludworth*, OP 21-0468, 2021 WL 4552210 (Mont. Oct. 5, 2021).

In the instant petition, Quinlan raises thirty-two claims. He asks this Court to dismiss his underlying case with extreme prejudice; expunge his record; award him court costs, fines and other expenses; and, order his immediate release from incarceration. (Doc. 1 at 7, ¶ 17.)

## II. Preliminary Findings

Prior to analyzing the procedural default issue, the Court will address Mr. Quinlan's Fifth Amendment argument, and several other claims in his petition that are not cognizable in federal habeas.

### i. Fifth Amendment Violation

Mr. Quinlan does not dispute that Claims 3 through 32 are procedurally defaulted. Instead, he first argues that his right to due process was violated, as well as Rules 5 and 7 of the Federal Rules of Criminal Procedure, when he was denied a preliminary hearing at the initiation of his state prosecution. (Doc. 7 at 4-5.) He contends that the manner in which the state conducted its criminal prosecution

violated the grand jury requirement outlined in the Fifth Amendment to the United States Constitution. *Id*. at 5.

As an initial matter, the Court would note that as a state defendant, the Federal Rules of Criminal Procedure had no application in Mr. Quinlan's underlying state proceedings. Additionally, while Mr. Quinlan believes the state violated his right to due process based upon the manner in which his case was charged, the Fifth Amendment Grand Jury Clause was not incorporated by the Fourteenth Amendment to apply to the states. *See, Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972) (noting that "indictment by grand jury is not part of the due process of law guaranteed to state criminal defendants by the Fourteenth Amendment"); *Hurtado v. California,* 110 U.S. 516, 535 (holding that the Fourteenth Amendment did not incorporate the Fifth Amendment right to a grand jury); see also, *Rose v. Mitchell*, 443 U.S. 545, 557 n. 7 (1979); *Gerstein v. Pugh*, 420 U.S. 103, 118-119 (1975); *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Beck v. Washington*, 369 U.S. 541, 545 (1962); *Gaines v. Washington*, 227 U.S. 81, 86 (1928). In short, to the extent that Mr. Quinlan believes he was entitled to indictment by a grand jury, and the attendant proceedings, he is mistaken. This Court has consistently rejected such a claim as frivolous and wholly lacking in substantive merit,[2] and this argument does not excuse the default of any of Mr.

---

[2] See e.g., *Ayers v. Kirkegard*, CV-14-110-BLG-DLC, 2015 WL 268870, at *2 (D.

4

Quinlan's claims.

### ii. Claims 15 through 29

All of these claims relate to Mr. Quinlan's assertion that he is a sovereign citizen under the ICCPR,[3] as well as other doctrines constituting the "Supreme Law of the Land," and as such, the State of Montana had neither standing nor personal jurisdiction to prosecute him. See e.g., (Doc. 1 at 13-18.) Although these claims are also procedurally defaulted on the same basis set forth below in section III(i)(b), they fail for an additional reason.

To the extent that Mr. Quinlan attempts to claim he is a sovereign citizen

---

Mont. Jan. 21, 2015) (granting a motion to file an information "does not make a judge part of the accusatory process any more than issuing a search warrant makes a judge part of the investigative process"); *Smith v. Frink*, CV-14-83-M-DLC, Or. at 3 (D. Mont. May 19, 2014) (prosecution via information is entirely consistent with federal guarantees of due process); *Stewart v. Green*, CV-15-36-BU-DLC, Or. at 3 (D. Mont. Sept. 19, 2016) (pretrial procedure proper under Montana's Constitution and charging statutes; no violation of the Fifth Amendment); *Dunsmore v. State*, CV-15-95-M-DLC, Or. at 2-3 (D. Mont. Dec. 20, 2016) (claim of ineffective assistance of appellate counsel frivolous because charging cases in Montana by information rather than by grand jury has been found to be constitutional; claimed Fifth Amendment violation regarding indictment by grand jury frivolous because the Fifth Amendment not incorporated to the states); *MacGregor v. McTighe*, CV-18-58-H-DLC, Or. at 4-5 (D. Mont. Jan. 15, 2019) (appellate counsel was not ineffective for failing to raise frivolous Fifth Amendment claim); *Haithcox v. Salmonsen*, CV-21-46-H-BMM, Or. at 3-4 (D. Mont. March 10, 2022) (rejecting grand jury argument and finding state's information charging procedure to be lawful and authorized under state law).

[3] The Court believes Mr. Quinlan is referring to the International Covenant on Civil and Political Rights.

and not subject to the laws of the State of Montana, or this Court, such an argument has been routinely rejected by the courts. See e.g., *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) (finding that regardless of an individual's claimed status, including as a "sovereign citizen" that person is not beyond the jurisdiction of the courts); see also, *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (describing the "sovereign citizen" defense as having "no conceivable validity in American law"). These claims are not cognizable in federal habeas and should be denied and dismissed for lack of merit.

### III.  Procedural Default Analysis

#### i.  Default of Remaining Claims

"A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn v. Martinez Ramirez*, 596 U.S. __, 142 S.Ct. 1718, 1727 (2022). Thus, a claim not raised before the state courts is procedurally defaulted, but the procedural default can be overcome if certain circumstances are met. As explained in subsections (a) and (b), all of Quinlan's remaining claims are procedurally defaulted. As further explained, Mr. Quinlan cannot make the requisite showing required to excuse the default of these claims.

#### a.  Claims 3, 4, 5, 6, 10, and 13

These claims were never presented to the Montana Supreme Court on direct

appeal or in Mr. Quinlan's state habeas petition. All of these claims, with the exception of Claim 10, allege ineffective assistance of trial counsel. Mr. Quinlan conceded that he did not present these claims to the Montana Supreme Court. See, (Doc. 1 at 9, 12.) In Claim 10, Mr. Quinlan alleges judicial misconduct occurred when the trial court allowed the victim, S.Q., to refuse to answer questions while on the witness stand. Mr. Quinlan claims to have presented this claim in his state habeas petition. But, while Mr. Quinlan's state petition references other problems with S. Q.'s testimony, it does not set forth the same claim presented here. See, (Doc. 1 at 11, 30.) Because none of these claims were presented to the state court, they are procedurally defaulted.

### b. Claims 7, 8, 9, 11, 12, 14, 30, 31, 32

Although not identical, the substance of these claims were presented to the Montana Supreme Court in Mr. Quinlan's original state habeas petition. Cf., State Pet. (Doc. 1 at 20-30) with § 2254 Pet. (Doc. 1 at 13-19.) As discussed in prior orders of this Court, however, the Montana Supreme Court refused to consider the claims he presented in his state habeas petition based upon Mont. Code Ann. § 46-22-101(2). This statute provides that the writ of habeas corpus is not available to attack the validity of the conviction or sentence of a person who has been adjudged guilty of an offense in a court of record and has exhausted the remedy of appeal.

Generally, when a state court's rejection of a federal claim "rests on a state

law ground that is independent of the federal question and adequate to support the judgment," a habeas petitioner has procedurally defaulted his claim. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To constitute an "adequate" state ground, a procedural bar must be one that is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001). To constitute an "independent" state procedural bar, the bar must rest on a purely state law ground. A state procedural rule is deemed to be independent if it is not interwoven with federal law or dependent upon a federal constitutional ruling. *Michigan v. Long*, 463 U.S. 1032, 1040 (1983). A state-law ground is interwoven if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75 (1983); *see also*, *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).

Mr. Quinlan was advised that the statute appeared to be an adequate and independent basis for the denial of his petition, and unless he could show otherwise, it would constitute a valid basis to refuse to address his claims. See e.g., (Doc. 3 at 7-8.) Despite being advised of the requisite showing, Mr. Quinlan failed to address the independent or adequate prongs of the test and, instead, argues that Mont. Code Ann. § 46-22-101(2) violates the federal constitution because it, in

effect, suspends the writ of habeas corpus. (Doc. 7 at 6-7.) But the Montana Supreme Court has addressed Quinlan's argument. It held that application of MCA § 46-22-101(2), and the attendant substitution of postconviction proceedings for habeas corpus proceedings when a petitioner has exhausted his right of appeal, does not amount to suspension of writ of habeas corpus. *Kills on Top v. State*, 1995, 273 Mont. 32, 901 P.2d 1368, *rehearing denied, certiorari denied*, 516 U.S. 1177.

Moreover, a version of the state habeas statue has existed since at least 1967. See, R.C.M. § 95-2701 (1967). Montana courts have consistently applied the updated version of this statute, MCA § 46-22-101, since its amendment in 1991. Thus, the procedural rule has been firmly established and regularly followed. It is not interwoven with federal law. The statute does not preclude review of certain claims, including constitutional claims, it simply requires that such claims be preserved and presented on appeal. See e.g., *Gates v. Missoula Cnty. Comm'rs*, 235 Mont. 261, 262, 766 P.2d 884, 884-85 (1988). There is no federal analysis at play. The rule was clear at the time that Quinlan defaulted these claims by failing to present them on appeal or in postconviction proceedings. Thus, the Court finds that MCA § 46-22-101(2) is adequate and independent under *Coleman*, making these claims also procedurally defaulted.

Accordingly, all of the referenced claims are procedurally defaulted and

"federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

### ii. Quinlan's Response to Default

In his response to the order to show cause, Mr. Quinlan asserts he can demonstrate cause and prejudice to excuse the default of his claims and that he is actually innocent of Incest. See, (Doc. 7 at 7-11.) As explained below, he makes no such showing.

### a. Cause and Prejudice

A petitioner may overcome the prohibition on reviewing procedurally defaulted claims if he is able to show "cause" to excuse his failure to comply with the state procedural rule, and "actual prejudice resulting from the alleged constitutional violation." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). To establish cause for a default, a petitioner must show that some objective factor external to the defense impeded efforts to comply with the State's procedural rule. See, *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A factor is external to the petitioner if it "cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. Prejudice to excuse the default "requires petitioner to establish not merely that the errors at trial created a

*possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Bradford v. Davis*, 923 F.3d 599, 613 (9th Cir. 2019) (emphasis in original, internal quotations omitted). "Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial." *Murray v. Carrier*, 477 U.S. 478, 494 (1986).

In his response to the order to show cause, Mr. Quinlan sets forth the details of what occurred leading up to his criminal charges, and the evidence that was presented at trial. (Doc. 7 at 7-11.) Mr. Quinlan points out that S.Q.'s initial physical examination showed no signs of scarring, tearing, or redness and that her hymen was intact. *Id*. at 7. S.Q. was then removed from the family by D.F.S. and a second medical exam was performed, although it was not a full S.A.N.E. exam.[4] *Id*. at 8. Mr. Quinlan asserts that the failure to perform a full rape exam, and the alleged shoddy investigation by law enforcement, violated his right to due process. *Id*. Mr. Quinlan then states that S.Q. provided conflicting accounts of what occurred and exhibited behavior that was indicative of dishonesty. *Id*. Mr. Quinlan points out that no physical evidence tied him to the crime of Incest, and

---

[4] S.A.N.E. exam is also known as a rape kit. The abbreviation S.A.N.E. stands for sexual abuse nurse examiner, one trained to collect physical evidence in sexual assault cases. See e.g., Tr. Trans. (Doc. 7-1 at 124, pp. 791-792; 131, pp. 832).

that his own attorneys moved to have the case dismissed due to a lack of evidence. *Id*. at 8-9. Additionally, Mr. Quinlan asserts S.Q. recanted her allegations, although the recantation letter was later misplaced by D.F.S. Mr. Quinlan believes that the prosecuting attorney was involved with the disappearance of the recantation letter and, in so doing, committed a *Brady* violation.[5] *Id*. at 9. Mr. Quinlan recounts that S.Q. had difficulty testifying at trial, refused to answer questions, and provided non-responsive answers. *Id*. at 10. When the trial court prohibited the defense from confronting S.Q. with extrinsic evidence to demonstrate her untruthfulness, Mr. Quinlan believes his right to confrontation was violated. *Id*. Mr. Quinlan asserts he did not commit incest because no intercourse occurred, only false allegations supported by hearsay and circumstantial evidence. *Id*. at 10-11.

In short, Mr. Quinlan recounts the evidence that was presented to the jury, and a summation of what occurred during the trial. But as set forth above, that is not the requisite showing to overcome the procedural default of these claims. Mr. Quinlan's response has not provided a valid justification for failing to present his claims below and/or comply with the state procedural rules. He has not shown an objective factor impeded his ability to properly present these claims in the state

---

[5] The rule established in *Brady v. Maryland*, 373 U.S. 83 (1963), requires the prosecution to disclose to the defense any materially exculpatory evidence in its possession.

courts. Instead, Mr. Quinlan's response indicates that he knew of the issues surrounding the trial. Thus, the failure to present the claims is fairly attributable to him and not an external factor. See, *Coleman*, 501 U.S. at 756-57. He cannot show cause to overcome the default of these claims. Absent cause, the Court does not consider whether there was prejudice.

### b. Fundamental Miscarriage/Actual Innocence

As previously explained, a procedural default may be excused for a fundamental miscarriage of justice. See e.g., *Cook v. Schriro,* 538 F.3d 1000, 1028 (9th Cir. 2008). The miscarriage of justice exception to procedural default "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 531 F.3d 933, 937 (9th Cir. 2008) (emphasis in original). Under this exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he demonstrates "actual innocence." *Schlup v. Delo*, 513 U.S. 298, 316 & n. 32 (1995). "Actual innocence" means factual innocence, not a mere legal insufficiency. See, *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Significantly, "[t]o be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy

13

eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. A petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup*, 513 U.S. at 327). Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

Mr. Quinlan simply reiterates his arguments relative to the evidence that were presented at trial. He claims the "recantation letter" that S.Q. wrote was never presented to the jury, and that the jury did not hear S.Q.'s "real" testimony. (Doc. 7 at 11.)

Although the actual letter had been lost by D.F.S., the jury did hear testimony regarding the contents of the letter. See e.g., Quinlan's App. Br. (Doc. 7-1 at 20) (referencing relevant trial testimony). The jury was advised that S.Q. wrote to her foster mother, Robin Wolff, something to the effect of "[Quinlan] didn't do anything to me, there does that make you happy?" *Id.*[6] The jury was also informed that S.Q. later disavowed what she had written in the letter, and claimed she only wrote what she did because she wanted to leave the foster home and return to her family home. *Id.* at 21, (citing trial transcript). S.Q. herself,

---

[6] See also, Trial Trans. Excerpt (Doc. 7-1 at 76) (defense opening statement discussing S.Q. recantation note).

14

directly addressed the note:

> Q: Do you remember what the note said?
> A: Yes.
> Q: Could you tell me what it said?
> A: It said that I wanted to go home and it wasn't true.
> Q: Okay. Why did you write that note to your – foster mom, Robin?
> A: Because I was upset and I didn't want to be there.
> Q: You didn't want to be there? And did you talk to Pam about that note with Robin there?
> A: Yes.
> Q: Ya? And did you tell Robin what really happened that day?
> …
> Q: Okay. [S.Q.] even though you wrote that note, did this really happen to you?
> A: Yes.

See, Trial Trans. Excerpt (Doc. 7-1 at 81.)

Thus, despite not receiving the actual letter, the jury was certainly made aware of the recantation note, the contents of the note, and the circumstances surrounding S.Q. writing the note.

Quinlan asserts the jury didn't hear S.Q.'s "real" testimony. The Court presumes this argument is premised upon the evidentiary rulings the trial court made, precluding the defense from using extrinsic evidence to impeach S.Q.'s testimony.[7] The Court would note, however, that the jury heard extensively from S.Q. on direct examination, cross-examination, and re-direct. S.Q.'s testimony occupied at least 200 pages of the trial transcript. See, (Doc. 7-1 at 78-102; 107-

---

[7] This argument corresponds with Claims 1 and 2 of Mr. Quinlan's petition. These claims will be addressed in a separate order. See, f.n. 1, *supra*.

114; and 115-118.)

Quinlan has presented no new reliable evidence that would demonstrate he is actually innocent of Incest. He simply reiterates information and evidence that was previously presented to, and rejected by, the jury. Mr. Quinlan takes issue with the manner in which evidence was presented at trial, but that is not the showing he is required to make. The record before this Court does not establish that this is the extraordinary case, under *Schlup*, that would warrant relief.

### c. Conclusion

As explained above, Claims 15-29 contained in Quinlan's petition are not cognizable in federal habeas. Further, Mr. Quinlan has failed to demonstrate the requisite cause and prejudice, or a fundamental miscarriage of justice, for Claims 3-14 and 30-32. Accordingly, these claims are procedurally defaulted without excuse. Thus, Claims 3-32 must be denied and dismissed.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

Claims 3-32 of Mr. Quinlan's Petition (Doc. 1) should be DENIED and DISMISSED with prejudice. Claims 1 and 2, challenging evidentiary rulings by the trial court and alleging a violation of Mr. Quinlan's right to confrontation, will be addressed in a separate order and/or proceedings.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Quinlan may object to this Findings and Recommendation within 14 days. 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Quinlan must immediately notify the Court of any change in his mailing address.</u>  Failure to do so may result in dismissal of his case without notice to him.

DATED this 2nd day of September, 2022.

                                      */s/ Timothy J. Cavan*
                                      Timothy J. Cavan
                                      United States Magistrate Judge